{¶ 1} Plaintiff-appellant, Angel Chamberlin, appeals from a decision of the Mahoning County Common Pleas Court awarding summary judgment in favor of defendants-appellees, The Buick Youngstown Company ("BYC") and David Sweeney.
 {¶ 2} BYC hired appellant as a finance and insurance ("FI") manager in September 1991. At that time, BYC had one other FI manager, Frank Perrotta. Perrotta remained an FI manager until October 1998 when he transferred to another department. Appellant remained in her position until her resignation in February 2000. During the time both appellant and Perrotta were FI managers, Perrotta earned a higher annual pay than appellant did. Appellant complained about the pay difference to Sweeney. Sweeney was BYC's president from 1991 to 1995 and was appellant's and Perrotta's direct supervisor. In 1995, Joseph Perry took over as BYC's president and appellant's and Perrotta's direct supervisor and, in 1997, Jack Jackintelle assumed the supervisor position.
 {¶ 3} Appellant resigned from BYC in February 2000. On October 10, 2000, she filed a complaint against appellees alleging sex discrimination and sexual harassment. Appellees filed a motion for summary judgment on April 1, 2002. Appellant filed a brief in opposition. Subsequently, appellees filed a reply brief in support of their motion. On June 7, 2002, the trial court awarded summary judgment to appellees on all counts finding that no genuine issue of material fact existed precluding judgment in their favor. Appellant field her timely notice of appeal on June 17, 2002.
 {¶ 4} Initially we should note that the parties attached uncertified deposition excerpts to the motion for summary judgment, brief in opposition to summary judgment, and reply brief in support of summary judgment. There is no indication on the docket sheet that the parties filed the full depositions with the trial court, nor did they file them with this court. Civ.R. 56(C) provides in part:
 {¶ 5} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."
 {¶ 6} The deposition excerpts do not fall under any of the types of evidence a court may consider when determining a summary judgment motion. A deposition transcript must be authenticated before it can be considered as legally acceptable evidence for summary judgment purposes.Bell v. Holden Surveying, Inc., 7th Dist. No. 01-AP-766, 2002-Ohio-5018, at ¶ 18. However, appellate courts have held that while a court is not required to consider improper summary judgment evidence, it may
consider such evidence if neither party objects. See, Bowmer v.Dettelbach (1996), 109 Ohio App.3d 680, 684; Hersch v. E.W. Scripps Co.
(1981), 3 Ohio App.3d 367, 373. This court recently stated:
 {¶ 7} "Appellate courts have stated that it is within the trial court's discretion to consider nonconforming evidence when there is no objection. Therefore, a trial court is permitted to sua sponte determine that the documentation attached to the summary judgment is not in conformity with the requirements of Civ.R. 56(C). When a trial court determines that it will not consider nonconforming evidence, that decision is not an error unless the trial court acted in an unreasonable, unconscionable, or arbitrary manner." (Internal citations omitted.) Bell, 7th Dist. No. 01-AP-766.
 {¶ 8} In the present case, it is clear that the trial court considered the deposition excerpts. The trial court stated in its judgment entry, "Plaintiff has presented evidence through depositions that show that the plaintiff and Mr. Perrotta performed identical duties and shared the same responsibilities in their positions as Finance and Insurance Managers." Additionally, the trial court referred to certain evidence in its judgment entry that it could only have gleaned from the deposition excerpts. Furthermore, neither party objected to the court's consideration of the deposition excerpts, as both parties are guilty of attaching such excerpts to their motions/briefs. Thus, we too will consider the deposition excerpts despite their noncompliance with Civ.R. 56(C).
 {¶ 9} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. Am. Industries Resources Corp. (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Flemming (1994),68 Ohio St.3d 509, 511. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc.
(1995), 104 Ohio App.3d 598, 603, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 247-248.
 {¶ 10} Appellant raises two assignments of error, the first of which states:
 {¶ 11} "A Trial Court Commits Reversible Error By Improperly Weighing Evidence And Granting Summary Judgment In Favor Of An Employer With Respect To A Claim Based On Gender Discrimination."
 {¶ 12} Appellant alleges the trial court improperly weighed the evidence and discounted certain evidence she provided. She asserts that she demonstrated a prima facie case of sex discrimination. Appellant also argues that appellees failed to demonstrate a non-discriminatory reason for paying her less than Perrotta. She asserts although appellees said the pay difference was due to Perrotta's seniority and experience, such justification is a lie. Finally, appellant contends the trial court ignored her evidence that appellees' reasons for the pay difference were a pretext. Appellant alleges she presented evidence that created a question of fact as to whether appellees paid her less because she is a woman. Appellant points again to the lies told to her by her supervisors. Additionally, she points to a comment made by Sweeney that she was a "token female" and to Sweeney's deposition testimony that she should not be paid the same as a man performing the same job.
 {¶ 13} R.C. 4112.02(A) provides it is an unlawful discriminatory practice "[f]or any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 14} The court in Sutherland v. Nationwide Gen. Ins. Co.
(1994), 96 Ohio App.3d 793 adopted a test for sex discrimination set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green
(1973), 411 U.S. 792 and Texas Dept. of Community Affairs v. Burdine
(1981), 450 U.S. 248. The test involves burden shifting between the parties. The burden first lies with the plaintiff to demonstrate a prima facie case of disparate treatment. Sutherland, 96 Ohio App.3d at 800, citing McDonnell Douglas, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the disparate treatment. Id. If the defendant meets its burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's non-discriminatory reasons were not its true reasons, but were a pretext for discrimination. Sutherland, 96 Ohio App.3d at 800, citing Burdine,450 U.S. at 253.
 {¶ 15} To prove a prima facie case of discrimination, the plaintiff must show (1) she is a member of a protected class and (2) she was treated differently than similarly situated employees for the same conduct. Sutherland, 96 Ohio App.3d at 801. It is undisputed that appellant is a member of a protected class. The trial court also found that appellant established a prima facie case of discrimination. It determined that appellant demonstrated she and Perrotta were similarly situated, despite Perrotta's seniority and experience.
 {¶ 16} In order to be similarly situated the employees "`must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Howell v. Summit County, 9th Dist. No. 20958, 2002-Ohio-5257, quoting Mitchell v. Toledo Hosp. (C.A. 6, 1992), 964 F.2d 577, 583. Appellees do not dispute that they paid Perrotta more than appellant. Appellant and Perrotta had the same supervisor. They held the same job title. They shared almost all of the same job duties, although each of them took on certain other responsibilities. Sweeney, their supervisor, rated them both as top performers. (Sweeney Depo. 31). However, BYC paid Perrotta higher wages during each year which appellant and Perrotta worked together. These similarities are enough to establish a prima facie case of disparate treatment despite the fact that Perrotta had more experience and seniority than appellant did. The burden of demonstrating a prima facie case of disparate treatment is not onerous. Starner v. GuardianIndustries (2001), 143 Ohio App.3d 461, 470, citing Burdine,450 U.S. at 253.
 {¶ 17} Since appellant established a prima facie case of discrimination, the burden shifted to appellees to provide a non-discriminatory reason for paying appellant less than Perrotta. They did so. Before beginning his job at BYC, Perrotta had worked in a finance capacity since 1978. (Perrotta Depo. 11-16). He also had several years experience running another automobile dealership's FI department. (Perrotta Depo. 14-15). On the other hand, appellant had worked in a finance capacity since 1983. (Chamberlin Depo. 6-7). Importantly, her job at BYC was her first job in the automobile business. (Chamberlin Depo. 13). Thus, Perrotta had more outside experience upon starting at BYC than appellant did. Furthermore, Perrotta began working at BYC as an FI manager three years before appellant was hired. (Perrotta Depo. 19-20). Hence, he had more seniority at BYC than appellant. These two reasons, experience and seniority, were sufficient to sustain appellees' burden.
 {¶ 18} Because appellees demonstrated a non-discriminatory reason for paying Perrotta more than appellant, the burden shifted back to appellant to show by a preponderance of the evidence that appellees' reasons for the pay difference were pretextual. Appellant presented her affidavit in which she states Sweeney and other BYC supervisors lied to her about her pay difference with Perrotta. (Chamberlin Affidavit). Joseph Perry and Jack Jackintelle both admitted they lied to appellant, telling her that BYC paid her and Perrotta the same, in order to appease her. (Perry Depo. 26-27; Jackintelle Depo. 60-61). Additionally, appellant presented her affidavit and Sweeney's testimony in which he admitted to referring to her as a "token female." (Chamberlin affidavit; Sweeney Depo. 42). Sweeney stated he referred to appellant in this manner because the auto industry is not known for its presence of women yet she persevered and was BYC's strongest, most talented female. (Sweeney Depo. 42).
 {¶ 19} Appellant also alleged that Sweeney admitted in his deposition that he believed she should not be paid the same as a man performing the same job. A careful reading of Sweeney's deposition reveals otherwise. When asked whether he believed appellant should make the same pay as a man doing the same job, Sweeney stated "not necessarily," but continued stating that the pay did not have to do with being male or female, but that it had to do with the job function, experience, tenure, and seniority. (Sweeney Depo. 34-35).
 {¶ 20} Appellees point out that BYC paid several male FI managers less than appellant. (Sweeney Affidavit). Additionally, they note that appellant's pay increased over the years at a higher rate than Perrotta's pay. (Sweeney Affidavit). These facts support appellees' non-discriminatory reasons for paying Perrotta more than appellant. However, the evidence appellant submitted about the lies told by her supervisors gives rise to a question of fact as to what BYC's true motive was for paying her less than Perrotta. Additionally, viewing Sweeney's "token female" comment in the light most favorable to appellant creates a question of fact as to BYC's true motive.
 {¶ 21} Accordingly, appellant's first assignment of error has merit.
 {¶ 22} Appellant's second assignment of error states:
 {¶ 23} "A Trial Court Commits Reversible Error By Granting Summary Judgment In Favor Of An Employer Despite Evidence That The Female Employee Was Repeatedly Subjected To Offensive Sexual Harassment By Her Superiors And Other Male Employees."
 {¶ 24} Two types of sexual harassment can support a sexual harassment claim under R.C. 4112.02(A), quid pro quo harassment and hostile work environment harassment. Quid pro quo harassment "is directly linked to the grant or denial of a tangible economic benefit." Hampel v.Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, 176. Hostile work environment sexual harassment is "harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment." Id.
 {¶ 25} Appellant contends that she presented prima facie cases of both quid pro quo and hostile work environment sexual harassment. We will address these claims separately.
 {¶ 26} As to her quid pro quo claim, appellant alleges Sweeney told her she could make more money if she accompanied him to a hotel. Appellant notes that the trial court found she was not fired, demoted, or given pay cuts due to turning down Sweeney's offer. But she asserts that R.C. 4112.02 does not require an employee to be fired or demoted in order to prove a claim for sexual harassment. Citing, Berge v. ColumbusCommunity Cable Access (1999), 136 Ohio App.3d 281. She also takes issue with the court's finding that no question of fact existed as to whether Sweeney's comment about going to a hotel was an offer for more compensation. Appellant alleges the court failed to consider that Sweeney made this comment during a discussion in which she complained to him about the pay difference between her and Perrotta.
 {¶ 27} Appellees assert that appellant's quid pro quo claim is not actionable because she failed to raise this claim in her complaint. Civ.R. 8(A) provides: "A pleading that sets forth a claim for relief, * * * shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Appellant's complaint meets both of these requirements with respect to her quid pro quo claim. Appellant alleges in count four of her complaint, "David Sweeney, principal of Defendant Buick Youngstown and supervisor of Plaintiff, without cause, provocation or justification, committed against Plaintiff, acts of belittlement, intimidation, and crude and offensive comments and conduct of a sexual nature." This allegation qualifies as a "short and plain statement" showing appellant is entitled to relief for sexual harassment, whether it be quid pro quo, hostile work environment or both.
 {¶ 28} To prove a claim for quid pro quo sexual harassment, the employee must show "(1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits, or that the employee's refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability."Harmon v. Belcan Engineering Group, Inc. (1997), 119 Ohio App.3d 435,437.
 {¶ 29} In support of her quid pro quo claim, appellant offered her affidavit. She stated that during working hours, Sweeney asked her to accompany him to a hotel. (Chamberlin Affidavit). At her deposition appellant described the conversation. She stated that she went to Sweeney's office to discuss why BYC did not pay her and Perrotta equally. Appellant claimed that Sweeney made the comment, "If you want more money we will go to the hotel down the street." (Chamberlin Depo. 21). She stated that she did not know if Sweeney meant what he said and told him she was not interested. (Chamberlin Depo. 21-22).
 {¶ 30} The trial court found appellant offered no evidence to support her contention that by declining Sweeney's alleged offer, she suffered a tangible job detriment. It further found that she presented no evidence to suggest Sweeney implied an offer for compensation. The court determined that no question of fact existed as to whether the proposition to visit a hotel was an offer for more compensation.
 {¶ 31} The trial court was correct in finding appellant suffered no tangible job detriment. Appellant provided no evidence that she suffered any sort of detriment because she turned Sweeney's alleged proposal down. The problem with appellant's argument is in her annual pay rates. She alleges Sweeney made the hotel comment sometime during 1996. If appellant's claim had merit and Sweeney intended to offer appellant a higher pay in exchange for accompaniment to a hotel, then since appellant denied his offer, presumably her pay would not have gone up. However, appellant's pay went up in the year 1996. Sweeney attached copies of appellant's W2s to his affidavit. In 1995, appellant earned approximately $89,000. (Sweeney Affidavit Exhibit 10). In 1996, appellant earned approximately $92,000. (Sweeney Affidavit Exhibit 10). Thus, there is no evidence that appellant's submission to Sweeney's alleged hotel offer was a condition for receiving a higher pay. Furthermore, a review of appellant's wages from 1992 to 1999 reveals a rapid increase in her pay over an eight-year period.[1]
 {¶ 32} Thus, appellant failed to present evidence on the fourth element necessary to sustain a quid pro quo claim. Accordingly, the trial court properly granted appellees summary judgment on this claim.
 {¶ 33} As to appellant's claim for hostile work environment sexual harassment, she asserts the trial court failed to consider the totality of the circumstances and instead looked only at single events. Appellant claims that she presented evidence that three male employees harassed her, including Sweeney.
 {¶ 34} To prove a claim of a hostile work environment, the employee must prove: "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Hampel,89 Ohio St.3d at 176-77.
 {¶ 35} The parties' arguments focus solely on the third element of the Hampel test. The trial court found that the first and second elements were not in contention. Additionally, the fourth element is not in contention. Thus, we too will examine only the "severe and pervasive" element.
 {¶ 36} In Peterson v. Buckeye Steel Casings (1999),133 Ohio App.3d 715, the court described how to determine if certain conduct rises to the level of severe and pervasive. It stated:
 {¶ 37} "Conduct that is merely offensive is not actionable as hostile work environment harassment under Title VII. Harris v. ForkliftSystems, Inc. (1993), 510 U.S. 17, 21, 114 S.Ct. 367, 370,126 L.Ed.2d 295, 301-302. Title VII is violated `[w]hen the workplace is permeated with "discriminatory intimidation, ridicule, and insult," * * * "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."' Id. at 21,114 S.Ct. at 370, 126 L.Ed.2d at 301. To be actionable under Title VII, conduct must be severe or pervasive enough to create both an objectively hostile or abusive work environment — one that a reasonable person would find hostile or abusive — and a subjectively hostile work environment — one that the victim perceived to be hostile or abusive. Whether an environment is hostile or abusive must be determined by looking at all the circumstances. While no single factor is required, circumstances to consider may include the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating as opposed to merely an offensive utterance, whether the conduct unreasonably interferes with an employee's work performance, and whether psychological harm results." Id. at 723.
 {¶ 38} Appellant alleged the following instances of harassment created a hostile work environment.
1. Sometime in 1996, appellant and Sweeney met to discuss her pay. Sweeney told appellant that if she wanted to make more money they could go down the street to a hotel. (Chamberlin Affidavit; Chamberlin Depo. 19-20).
2. Mike Thomas, a salesman at BYC during the last year and a half of appellant's employment, asked appellant out on dates ten or 12 times in front of other employees despite her demands that he stop doing so. (Chamberlin Affidavit; Chamberlin Depo. 34).
3. Over a period of six to eight months, Perry made jokes about wanting to rub against appellant, despite appellant's request that he refrain from making these comments. Additionally, on four or five occasions, Perry put his arm around appellant while standing side-by-side and rubbed against her "hip to hip." (Chamberlin Affidavit; Chamberlin Depo. 30, 76-77).
 {¶ 39} Viewing these allegations as true, we must determine if there is a question of fact as to whether they rise to the necessary level of severe and pervasive conduct. Appellant claims her case is similar to Bucher v. Sibcy Cline Inc. (2000), 137 Ohio App.3d 230 andPeterson, 133 Ohio App.3d 715. In Bucher, the plaintiff-employee presented evidence that another employee approached her from behind and stuck his tongue in her ear. She also presented evidence that the company president upon encountering her in the company's administrative offices, regularly put his arm around her, held her close, and asked about her day. She also presented evidence that on three or four occasions the president patted her on the butt. She stated at trial that she perceived the conduct as inappropriate, that it embarrassed, offended and discomfited her, and that, although it did not prevent her from doing her job, it made working with the president and the other employee more difficult. Based on this evidence, the appellate court held it was error for the trial court to grant the employer a directed verdict.
 {¶ 40} In Peterson, the plaintiff-employee alleged that another employee, whom she believed to be her supervisor, engaged in the following conduct on an almost daily basis: He grabbed her buttocks; rubbed his body against her; blew kisses at her; winked at her; told her his wife was not home and asked her to come to his house; stared at her as she walked into the office and shook his head in disbelief; licked his lips at her; and held onto her hand and would not let go when she would hand him something. The court concluded that since the harassing behavior went well beyond offensive comments and included repeated and offensive touching and invitations and because the plaintiff stated the offensive conduct caused her to avoid the person's presence and adversely affected her work, a genuine issue of material fact existed as to whether the behavior created a hostile work environment.
 {¶ 41} Appellees point to several cases in which more egregious allegations did not rise to the level of severe and pervasive conduct. For example, in Starner, 143 Ohio App.3d at 476, the court held that conduct including physical touching, tickling, drunk co-workers giving hugs at a party, overhearing conversations about women's breasts, and telling a dirty joke over a period of two and a half years "was not sufficiently severe or pervasive to alter the terms of her employment and create an abusive work environment." And in Powers v. Ferro Corp., 8th Dist. No. 79383, 2002-Ohio-2612, the court held that conduct including a supervisor looking at the employee's breasts and stating "those are nice," showing the employee a sex questionnaire, rubbing the employee's shoulders, and asking the employee out to lunch did not rise to the level of severe and pervasive.
 {¶ 42} In the present case, appellant's allegations are not as severe as the allegations in Bucher and Peterson. In Bucher, the alleged offenses involved much more personal touching. One employee went so far as to stick his tongue in the plaintiff's ear. Additionally, the president often grabbed her and held her close and, on several occasions, touched her buttocks. In Peterson, the offensive behavior occurred on a daily basis. The offensive behavior also involved more personal touching including the supervisor grabbing the employee's buttocks, rubbing his body against hers, and holding onto her hand and not letting go.
 {¶ 43} The conduct appellant complains of, while inappropriate and unprofessional, did not permeate the workplace with discriminatory intimidation, ridicule, and insult. Appellant worked at BYC for almost nine years. Over this nine-year period she complained of several inappropriate comments by Sweeney and Perry, a salesman asking her on dates ten to 12 times, and Perry putting his arm around her and rubbing against her, hip to hip, four or five times. This conduct was neither frequent nor severe. There is no evidence that appellant felt physically threatened or humiliated. Appellant's work performance did not suffer. Sweeney stated appellant was a top performer and her annual pay rose at very quick rate. Finally, there was no evidence that appellant suffered psychological harm.
 {¶ 44} Accordingly, appellant's second assignment of error is without merit.
 {¶ 45} The decision of the trial court is hereby affirmed as to appellant's sexual harassment claims and reversed as to appellant's sexual discrimination claim and this cause is hereby remanded for further proceedings according to law and consistent with this opinion.
Vukovich and Waite, JJ., concur.
[1] Appellant's yearly income was approximately as follows: 1992 — $37,300; 1993 — $55,600; 1994 — $87,200; 1995 — $89,000; 1996 — $92,000; 1997 — $85,000; 1998 — $116,100; 1999 — $113,500. (Sweeney Affidavit Exhibit 10).