PETERSON, Appellant,

v.

BUCKEYE STEEL CASINGS et al., Appellees.

[Cite as *Peterson v. Buckeye Steel Casings* (1999), 133 Ohio App.3d 715.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–685.

Decided June 8, 1999.

716

718

Rayl L. Stepter, for appellant.

Vorys, Sater, Seymour & Pease L.L.P., Jonathan M. Norman, Mark A. Knueve and Robert A. Harris, for appellees.

BOWMAN, Judge.

Appellant, Julia Peterson, filed a complaint against appellees, Buckeye Steel Casings and Gregory Hall. The complaint set forth six claims for relief based upon appellant's allegations that Hall and other employees and managers at Buckeye Steel subjected her to sexual harassment. The Franklin County Court of Common Pleas granted appellees' motion for summary judgment as to all of appellant's claims. Appellant appeals the trial court's judgment as to four of her claims and presents the following assignments of error:

"Assignment of Error No. 1: Whether there were genuine issues of material fact as to appellant's claim of hostile environment sexual harassment.

"Assignment of Error No. 2: Whether there were genuine issues of material fact as to appellant's claim of retaliation for reporting sexual harassment.

"Assignment of Error No. 3: Whether there were genuine issues of material fact as to appellant's claim of negligent retention and supervision."

 Appellate court consideration of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841, 843–844. Pursuant to Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343, 345. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying the portions of the record that establish the absence of a genuine issue of fact on a material element of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274. After the moving party satisfies this initial burden, the nonmoving party bears a reciprocal burden to respond by affidavit, or as otherwise provided in Civ.R. 56, and must set forth specific facts showing the existence of a genuine issue for trial. Civ.R. 56(E). If the

nonmoving party fails to so respond, summary judgment, if appropriate, shall be entered against her. Civ.R. 56(E).

Buckeye Steel hired appellant in April 1995, as a safety and security technician ("SST"). SSTs are classified as parttime employees and do not receive benefits. Appellant continues to be employed with Buckeye Steel. Hall started working at Buckeye Steel as an SST in December 1994 and was promoted to lead SST around July 1995. Because this appeal is from a decision granting summary judgment, the facts are to be construed most strongly in appellant's favor. Appellant's deposition and affidavit provide the following facts:

Appellant claims that Hall's sexually offensive behavior started from the beginning of her employment at Buckeye Steel and occurred on almost a daily basis. Appellant alleges that Hall would grab her buttocks and rub his body against her, blow kisses at her, wink at her, tell her his wife was not home and ask her to come to his house, stare at appellant as she walked into the office and shake his head in disbelief, lick his lips at her, and hold onto her hand and not let go when appellant would hand him something. Appellant also refers to incidents when Hall said that he wanted to bite her breasts. Appellant states that she would tell him to stop and otherwise let him know that she did not welcome his behavior.

Appellant states that, from the beginning of her employment, she reported the incidents of harassment to David O'Brien, the Safety and Security Administrator. O'Brien would respond that he would talk to Hall; however, Hall continued to sexually harass appellant until September 1995, when she sent a written complaint to O'Brien. Although the sexual harassment ended with her written complaint, appellant believes that she was retaliated against because she complained.

Appellant stated at her deposition that, although this information was never directly communicated to her, it was made obvious to her that her job would be in jeopardy if she did not go along with sexually suggestive and offensive behavior and that, if she did go along with this behavior, she would advance more quickly.

In January 1996, appellant handed in her letter of resignation due to the retaliation. Larry Jones, Director of Human Resources, had a meeting with her and asked her not to resign until he investigated her charges of sexual harassment and retaliation. Appellant states that Jones reported back to her that, although they found that Hall had sexually harassed her and had gone overboard in his behavior, since it ended in September 1995, they would do nothing about it and they did not believe that she had been retaliated against. Appellant states that health problems have prompted her to remain at her present job.

Appellant testified that she believed that Hall was her supervisor and that he acted like a supervisor, in that he set the SSTs' work duties and schedules, and he reprimanded and disciplined them when he felt they did not properly carry out their duties. In her affidavit, she states that Hall told her that he was her supervisor, disciplined her, threatened her with termination, gave her warnings, and gave SSTs orders in the log book. At her deposition, appellant stated that she was confused as to who her supervisor was because O'Brien would tell her that he was her supervisor, but Hall would then tell her that he was her supervisor.

In his deposition, David O'Brien stated that he was appellant's supervisor and that Hall had no supervisory responsibilities. O'Brien defined "supervisor" as someone who could hire, fire, and discipline; however, O'Brien also stated in his deposition that Hall did discipline SSTs for minor infractions, such as coming to work late, wearing an improper uniform, and not performing duties consistently. O'Brien stated that the extent of Hall's disciplinary authority was to issue written or oral warnings. O'Brien added that Hall could also make recommendations as to more serious discipline, but that O'Brien made the ultimate decision. O'Brien also discussed the fact that Hall established a policy allowing nonemployees to join SSTs for lunch, but that this policy was changed after it was abused.

O'Brien confirmed that appellant had mentioned several incidents of sexual harassment to him during her time at Buckeye Steel and estimated that she made sexual harassment reports eight to ten times. The first report that O'Brien recalled was at a meeting he had with appellant and another SST two to three months after appellant had started working at Buckeye Steel.

In his deposition, Hall stated that his responsibilities included preparing the weekly schedule, but that disciplinary actions and decisions came down through O'Brien. Hall also conducted job interviews and passed information along to O'Brien, who made the final decision on hiring. Hall stated that whether a verbal warning was given every time an employee engaged in a violation depended on the circumstances and that, as to the implementation of progressive discipline, it was a judgment call, about which he tried to be consistent, but a lot depended on the circumstances. Hall also had the authority to give appellant and other SSTs breaks so that they could run personal errands.

In her first assignment of error, appellant asserts that genuine issues of material fact exist as to her hostile work environment claim.

R.C. 4112.02(A) prohibits an employer from engaging in sexual discrimination against an employee. Case law interpreting and applying Title VII of the Civil Rights Act of 1964, Section 701 *et seq.*, as amended, Section 2000e *et seq.*, Title 42, U.S. Code ("Title VII"), is generally applicable to cases involving R.C.

Chapter 4112. *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782. Sexual harassment that constitutes discrimination on the basis of sex and violates Title VII is generally categorized as either a *quid pro quo* claim or a hostile work environment claim. The terms *"quid pro quo"* and "hostile work environment" serve to distinguish roughly between cases in which threats are carried out (*quid pro quo*) and cases in which threats are not carried out or are absent altogether (hostile work environment). *Burlington Industries, Inc. v. Ellerth* (1998), 524 U.S. 742, 751–755, 118 S.Ct. 2257, 2264–2265, 141 L.Ed.2d 633, 646–649.

■■■ Conduct that is merely offensive is not actionable as hostile work environment harassment under Title VII. *Harris v. Forklift Systems, Inc.* (1993), 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295, 301–302. Title VII is violated "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' * * * 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Id.* at 21, 114 S.Ct. at 370, 126 L.Ed.2d at 301. To be actionable under Title VII, conduct must be severe or pervasive enough to create both an objectively hostile or abusive work environment—one that a reasonable person would find hostile or abusive—and a subjectively hostile work environment—one that the victim perceived to be hostile or abusive. Whether an environment is hostile or abusive must be determined by looking at all the circumstances. While no single factor is required, circumstances to consider may include the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating as opposed to merely an offensive utterance, whether the conduct unreasonably interferes with an employee's work performance, and whether psychological harm results.

■■■ Employer liability for hostile work environment harassment varies depending upon whether the alleged harasser is a supervisor or a co-worker. When the alleged harasser is a supervisor, the employer may be vicariously liable. *Burlington*, 524 U.S. at 763–765, 118 S.Ct. at 2270, 141 L.Ed.2d at 654–655. Under this scenario, when harassment by a supervisor with authority over the employee culminates in a tangible employment action against the plaintiff, the employer is subject to vicarious liability and the analysis ends. *Id.* at 763–765, 118 S.Ct. at 2270, 141 L.Ed.2d at 654–655. Where no tangible employment action was taken, but a hostile work environment was created, the employer may avail itself of an affirmative defense to liability. To successfully raise this affirmative defense, an employer must establish two elements by a preponderance of the evidence: first, that the employer exercised reasonable care to prevent and correct properly any sexually harassing behavior, and second, that the plaintiff-employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

When the alleged harasser is not a supervisor, but a co-worker, the employer may be liable to the plaintiff based on its own negligence. Under this scenario, an employer may be liable for the sexual harassment of an employee by a co-worker when the employer knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action. *Blankenship v. Parke Care Ctrs., Inc.* (C.A.6, 1997), 123 F.3d 868, 872–873.

Appellant presents several arguments in support of her first assignment of error. First, appellant contends that a genuine issue of material fact exists as to whether the alleged sexual harassment unreasonably interfered with her work performance and created an intimidating, hostile, or offensive work environment. Whether a work environment is a hostile environment is a question of fact. *Rabidue v. Osceola Refining Co.* (C.A.6, 1986), 805 F.2d 611, 622.

The cases that appellee cites and that the trial court relied upon are distinguishable. In *Koelsch v. Beltone Electronics Corp.* (C.A.7, 1995), 46 F.3d 705, the plaintiff alleged only two separate incidents of sexual harassment over a period of three hundred days. In *Saxton v. Am. Tel. & Tel. Co.* (C.A.7, 1993), 10 F.3d 526, the plaintiff based her sexual harassment claim on two incidents. The court found, as a matter of law, that two instances of sexual harassment did not rise to the level of pervasive harassment, nor did it find the incidents sufficiently severe to stand on their own. Finally, in *Gearhart v. Eye Care Ctrs. of Am., Inc.* (S.D.Tex.1995), 888 F.Supp. 814, the court found that inappropriate comments over a six-week period and three incidents of offensive touching, as a matter of law, were not enough to create an actionable hostile work environment claim.

Appellant's allegations are substantially different from those of the plaintiffs in *Koelsch, Saxton,* and *Gearhart.* Notably, appellant alleges that, almost daily over a period of several months, Hall engaged in behavior that went well beyond offensive comments and included repeated and offensive touching and inviting her to his house when his wife was gone. Furthermore, in her affidavit, appellant states that Hall's conduct caused her to avoid his presence and, consequently, adversely affected her work.

This court finds that, taken as true, appellant's allegations create a genuine issue of material fact as to whether Hall's actions resulted in an intimidating, hostile or offensive work environment.

In her second argument in support of her first assignment of error, appellant asserts that there is a genuine issue of material fact as to whether Hall was her supervisor. To support her position that Hall was her supervisor, appellant relies in part on several exhibits. The exhibits are as follows: five interoffice memoranda, SST Absentee and Call Off Guidelines, a disciplinary action sheet issued by Hall to appellant, an excused absence request submitted by

appellant and signed by Hall, and excerpts of Hall's entries into the SST log book. Appellees have objected to these exhibits on the basis that they are not properly incorporated into the record. Because these exhibits appear not to have been properly authenticated, they will not be considered. *Cincinnati Ins. Co. v. Quikrete Cos.* (Sept. 17, 1996), Franklin App. No. 96APE04–424, unreported, 1996 WL 532188.

■ When determining whether an employee is a supervisor for purposes of finding an employer vicariously liable for the employee's sexual harassment, the underlying focus is the authority the employee wields over the subject of the harassment. In *Kauffman v. Allied Signal, Inc.* (C.A.6, 1992), 970 F.2d 178, the court addressed the issue of whether an employer could be liable for the sexual harassment by a production supervisor. The production supervisor's duties included assigning jobs, delegating work, analyzing problems, supervising workers, and reporting attendance. However, the supervisor did not have power to fire or hire employees. Noting the supervisor's significant input into the hiring and firing process, the court found that a question of fact existed as to whether he had enough authority to subject the employer to vicarious liability under Title VII.

The deposition evidence in the record establishes that Hall had some disciplinary authority over appellant and other SSTs, was involved with interviewing and hiring SSTs, had the authority to determine appellant's work schedule and grant her breaks, and established a practice contrary to company policy when he allowed nonemployees to join SSTs for their lunch breaks. Accordingly, this court concludes that a genuine issue of material fact exists as to Hall's supervisory status for purposes of appellant's hostile work environment claim.

■ Appellant's third argument in support of her first assignment of error asserts that there is a genuine issue of material fact as to whether a tangible employment action was taken against her. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington*, 524 U.S. at 761, 118 S.Ct. at 2268, 141 L.Ed.2d at 652–653.

■ In support of this argument, appellant alleges that she was not considered for promotion to a secretarial opening, a fulltime position with benefits. In January 1996, after another SST, Wendy Hinton, had been offered the position but declined it, appellant sent a memo to Larry Jones expressing her interest in the position. Appellant contends that she was never considered for the position and was told by Jones that they were only going to interview outside applicants. Appellant then contends that the position was offered to another SST, Janet

Haas, but was ultimately awarded to Hinton when she changed her mind and accepted the position. Appellant argues that the failure to consider her for promotion to a secretarial opening was the tangible employment action. However, appellant does not allege, nor is there evidence, that Hall had any influence over whether appellant was interviewed for this position—a non-SST position. For purposes of hostile work environment harassment, the tangible employment action must have been taken by the alleged harasser. See *Burlington,* 524 U.S. at 759–765, 118 S.Ct. at 2268–2270, 141 L.Ed.2d at 651–655. Appellant also refers to an incident when O'Brien reprimanded her for visiting with her husband on company premises. This argument fails on two grounds: first, a reprimand does not constitute a significant change in employment status; second, O'Brien, not Hall, reprimanded appellant. Accordingly, this court finds no genuine issue of material fact on this issue and finds that, as a matter of law, appellant has identified no evidence that Hall was responsible for a tangible employment action being taken against her.

■ However, our finding that no tangible employment action was taken does not determine the ultimate question of whether Buckeye Steel can be liable for hostile work environment harassment. It merely establishes that Buckeye Steel has an opportunity to assert the affirmative defense set forth in *Burlington.* Appellant argues that a material issue of fact exists as to whether Buckeye Steel met the burden of proving this affirmative defense. Appellant alleges, in her deposition, that she verbally complained to O'Brien soon after she started working at Buckeye Steel. At best, the evidence indicates that the sexual harassment did not end until September. Based on this evidence, reasonable minds could conclude that Buckeye Steel did not promptly investigate appellant's allegations against Hall and correct any sexually harassing behavior. Therefore, this court finds a material issue of fact on the question of whether Buckeye Steel has established its affirmative defense.

Likewise, if Hall was not appellant's supervisor for purposes of vicarious liability, appellant's claim that she complained to O'Brien well before September creates a genuine issue of material fact as to Buckeye Steel's direct liability based on the theory that it knew of the sexual harassment by a co-worker but failed to implement prompt and appropriate corrective action.

For the above reasons, summary judgment on appellant's hostile work environment claim against Buckeye Steel was inappropriate.

■ As to appellant's hostile work environment claim against Hall individually, the Ohio Supreme Court recently held that supervisors and managers are accountable for discriminatory conduct and may be held liable under R.C. Chapter 4112. *Genaro,* 84 Ohio St.3d 293, 703 N.E.2d 782, syllabus. Therefore,

based on the above discussion finding summary judgment inappropriate as to Buckeye Steel, summary judgment is also inappropriate as to appellant's hostile work environment claim against Hall.

Appellant's first assignment of error is sustained.

In her second assignment of error, appellant asserts that the trial court erred when it granted summary judgment on her retaliation claim. Appellant contends that the trial court improperly made findings of fact when it found that no adverse actions were taken in response to her sexual harassment complaints.

Ohio law prohibits retaliating against an employee who has opposed any unlawful discriminatory practice or has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under R.C. 4112.01 through 4112.07. R.C. 4112.02(I). When analyzing retaliation claims, Ohio courts rely on federal case law. *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App.3d 396, 402, 650 N.E.2d 950, 954. To prove a claim of retaliation, a plaintiff must establish three elements: (1) that she engaged in protected activity, (2) that she was subjected to an adverse employment action, and (3) that a causal link exists between a protected activity and the adverse action. Once a plaintiff successfully establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the articulated reason was a pretext.

The adverse action need not result in pecuniary loss, but must materially affect the plaintiff's terms and conditions of employment. *Wille v. Hunkar Labs., Inc.* (1998), 132 Ohio App.3d 92, 724 N.E.2d 492, citing *Kocsis v. Multi-Care Mgt., Inc.* (C.A.6, 1996), 97 F.3d 876. Factors to consider when determining whether an employment action was materially adverse include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Natl. Bank & Trust Co.* (C.A.7, 1993), 993 F.2d 132, 136. Changes in employment conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action. *Kocsis* at 886.

Appellant identifies several examples of what she believes to be retaliatory actions. Appellant claims that she was singled out and disciplined by Hall and O'Brien for seeing her husband in "restricted" portions of the company premises while other employees who did the same were not disciplined. Appellant also believes that she was not considered for promotion to the secretarial opening in retaliation.

Appellant also states that Buckeye Steel took away her job responsibilities of assigning job duties to co-workers on her shift and training new SSTs. Further, she states that she was denied or delayed receiving hazardous materials training, EMT training, and hearing tests, while other SSTs were not. Appellant learned that Hall had meetings with other SSTs and did not inform her of the meetings. Hall and O'Brien also scrutinized her attendance more closely than other SSTs.

Appellees argue that, when an employee suffers no decrease in salary or loss of benefits, there can be no finding of an adverse employment action. Appellees note that appellant suffered no decrease in salary, no loss of benefits and no change in position; thus, they contend, she suffered no adverse employment action. Appellees also argue that appellant's allegations in support of an adverse employment action, including a written reprimand and denial of promotion, cannot arguably be considered materially adverse. Appellees rely primarily on cases that found no adverse employment action based on a reassignment with no decrease in pay or benefits. On the other hand, appellant cites *Robinson v. Southeastern Pennsylvania Transp. Auth.* (C.A.3, 1993), 982 F.2d 892, in which the Third Circuit Court of Appeals upheld a finding of retaliation based on a round of disciplinary actions that the trial court had deemed pretextual. Additionally, in *Wille*, the court found that exclusion from meetings that directly affected the plaintiff's ability to perform her job was an adverse action. Accordingly, this court finds that appellant's alleged acts of retaliation, including that she was denied consideration for promotion, excluded from meetings, and singled out for discipline, are sufficient to support a finding of adverse employment action and establish a prima facie case of retaliation.

In his deposition, Jones stated that he thought he had told appellant that they would consider her for the secretarial position, but he did not definitely state that she was actually considered. In his affidavit, Jones states only that appellant expressed an interest in the position, but that Hinton had already been trained for the position and eventually filled it. There is no evidence to repudiate appellant's claim that she was told that only outside people were going to be considered after Hinton initially declined the opening. Nor do appellees deny that appellant was disciplined. Furthermore, Hall acknowledges that he did hold SST meetings without appellant being present, but stated that the subjects of these meetings were not relevant to appellant's duties.

At issue is whether appellees' acts had a retaliatory animus. Animus by its very nature is not easily established with direct evidence. Thus, despite appellant's failure to produce direct evidence supporting her claim that appellees acted with retaliatory animus, this court finds that appellant has introduced sufficient circumstantial evidence to establish a genuine issue of material fact on the question.

Appellant's second assignment of error is sustained.

In support of her third assignment of error, appellant asserts that genuine issues of material fact exist regarding her claims for negligent retention and negligent supervision. A successful claim for negligent hiring or retention must establish the following elements: (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employer's act or omission causing plaintiff's injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724, 739, 680 N.E.2d 161, 170–171.

Appellees' arguments in support of summary judgment as to appellant's negligent supervision and retention claims ignore appellant's claim that she made numerous verbal complaints before her September written complaint. Appellees refer only to appellant's September written notice of harassment, and stress that appellant's claims are uncorroborated and that Hall's denial of wrongdoing is credible; however, this differing view of the evidence and inferences to be drawn from the evidence create disputed issues of material fact.

Accordingly, appellant's third assignment of error is sustained.

For the foregoing reasons, appellant's assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and the cause is remanded for proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

TYACK and PEGGY BRYANT, JJ., concur.