OPINION
{¶ 1} Plaintiff-appellant, Steven W. Peitsmeyer ("appellant"), appeals from the judgment and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Jackson Township Board of Trustees ("Jackson").
 {¶ 2} Appellant was a firefighter formerly employed by the Jackson Township Fire Department for approximately 28 years, most recently as assistant chief, where his father had previously served as fire chief. As a result of an employment dispute, appellant entered into a settlement agreement and release ("release") with Jackson on May 6, 1998. Pursuant to the release, appellant received approximately $70,000. Appellant agreed to resign from employment with Jackson on May 8, 1998 and, also, agreed to release all claims against it. At the time of signing, appellant was allegedly told that he would have sufficient time to gather his office belongings. On May 7, 1998, appellant began collecting and boxing up his personal items to take home. During this time, appellant's wife called and informed him that there was a water problem in their basement. Appellant left the fire station to attend to the problem.[1]
While appellant was at home, another firefighter came to his house to deliver the rest of his belongings, reportedly pursuant to an order of Trustee Larry Thomas. Appellant told the firefighter that he was still the assistant chief of the department and gave him an order to take his things back to the fire station.
 {¶ 3} Later that day, appellant returned to the station. He discovered that someone had gone into his locked office and unlocked his desk drawer and locker, and discarded some of his personal belongings, including sensitive personal documents dealing with his son's legal problems. According to appellant, certain items were thrown in the trash. Appellant was forced to sort through his personal items in front of other firefighters on a folding table and had to retrieve a trash bag containing personal items from a trash container. Further, various Vietnam War mementos were thrown away which appellant was unable to locate.
 {¶ 4} On April 6, 2001, after approximately three years during which appellant retained the $70,000 settlement money, he filed a complaint against Jackson alleging the following causes of action: (1) retaliation; (2) invasion of privacy; (3) violation of public policy; (4) intentional infliction of emotional distress; (5) bad faith breach of contract; and (6) conversion. Jackson filed a motion for summary judgment arguing that the release barred all claims, or alternatively, each claim failed on the merits. The trial court held that because appellant alleged willful and wanton misconduct by Jackson, the release did not bar the claims as a matter of law. However, the trial court granted the motion as to the merits of each claim, except conversion. Subsequently, Jackson filed a second motion for summary judgment regarding the conversion claim. Although this motion was unopposed by appellant, the trial court nonetheless found that Jackson had come forward with sufficient evidence to show that it did not act willfully or wantonly with respect to the conversion claim. Accordingly, the court granted Jackson's motion. Appellant timely filed the instant appeal as to the granting of the initial summary judgment only.[2]
 {¶ 5} Appellant asserts the following three assignments of error:
 {¶ 6} "I. The trial court erred in granting appellee's motion for summary judgment on appellant[']s claims of retaliation as set forth in R.C. 4112.01 et. seq., and in violation of public policy case law due to an erroneous interpretation of a settlement agreement and release executed on May 6, 1998 between appellant and appellee's [sic] (emphasis added).
 {¶ 7} "II. The trial court erred in granting appellee's motion for summary judgment on appellant[']s claim for infliction of emotional distress by an improper application of Ohio's common law to the outrageous and extreme conduct of appellant's fire chief and trustee.
 {¶ 8} "III. The trial court erred in granting appellee's motion for summary judgment on appellant's claim for invasion of privacy due to an improper application of Ohio law."
 {¶ 9} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183. In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Turner v. Turner (1993),67 Ohio St.3d 337, 340. When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. Id.
 {¶ 10} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).
 {¶ 11} In his first assignment of error, appellant argues that his retaliation in violation of public policy claim is not barred by the release since his termination was not effective until May 8, 1998. As noted above, appellant signed the release on May 6, 1998 and the alleged retaliatory acts occurred on May 7. The relevant portions of the release are as follows:
 {¶ 12} "[Appellant] fully and forever releases, acquits, and discharges Jackson Township and its trustees, agents and employees, including * * * Larry Thomas * * * from any and all claims, demands, damages, expenses, liabilities, judgments, and causes of action * * * arising from and in any way connected with the employment relationship between the parties, any actions during the relationship, and/or termination thereof * * * relating directly or indirectly to or resulting directly or indirectly from his employment with, or separation from, Jackson Township. * * *
 {¶ 13} "That Mr. Peitsmeyer is aware that, by signing this Settlement Agreement and Release, he is giving up any right to sue Jackson Township, or to initiate any other legal proceedings against Jackson Township * * * for any other claims which he may have based upon any event which occurred before 7 calendar days after this Settlement Agreement and Release is signed, except claims for workers' compensation benefits and claims for vested pension benefits.
 {¶ 14} "That no promises or representations except those contained in this Settlement Agreement have been made to Mr. Peitsmeyer in connection with the termination of his employment.
 {¶ 15} "That Mr. Peitsmeyer is aware of the right to revoke this Settlement Agreement and Release at any time during the seven calendar days after the Settlement Agreement and Release is signed by him, in which case none of the provisions of this Settlement Agreement and Release will have effect. * * *"
 {¶ 16} Appellant signed the release on May 6. Appellant has never exercised his right to revoke. The parties dispute whether the events of May 7 fall within the "scope" of the release. Appellant argues that the May 7 events are excluded from the release based on the language "for any other claims which he may have based upon any event which occurred before 7 calendar days after this Settlement Agreement and Release is signed." (Emphasis added.) Appellant claims that this language should be interpreted to mean that protected acts would have had to occur on May 6, 1998 or any date prior thereto. Since the events at issue occurred on May 7, they are excluded from the release. Jackson argues that the appropriate date to look at is May 13, seven days after signing, and any events that occurred before May 13 are included in the release.
 {¶ 17} Generally, a release of a cause of action is an absolute bar to a later action on any claim "encompassed" within the release. Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 13. Where a party has taken and kept the benefits of an agreement of compromise and settlement, she/he will be conclusively estopped from asserting any claim against that which was released pursuant to such agreement. Bd. of Commrs. of Columbiana Cty. v. Samuelson (1986), 24 Ohio St.3d 62, 64-65. "A release is a contract and, as such, the overriding consideration in interpreting a release is to ascertain the intent of the parties, which intent is presumed to reside in the language the parties chose to employ in the agreement." Denlinger v. City of Columbus (Dec. 7, 2000), Franklin App. No. 00AP-315, at 5. A court will not resort to extrinsic evidence unless the language is unclear or ambiguous. Id.
 {¶ 18} Ohio law is equally clear that a release is invalid as to willful and wanton misconduct. Id. at 8. Future liability exists if the alleged conduct involves intentional, reckless, willful or wanton misconduct. Id. at 7-8. In Denlinger, the appellant alleged willful and wanton misconduct in five independent tort claims, using the words "reckless, willful and wanton." Id. at 8. Given these allegations, the court held that the release and waiver provisions did not bar appellant's claims as a matter of law. Id.
 {¶ 19} In this case, the court does not need to address the question of the parties' intent. Based on Denlinger and other Ohio precedent, the court finds that the release at issue does not bar appellant's claims as a matter of law due to appellant's allegations of willful and intentional misconduct. Appellant uses the terms "intentional," "willful," "wanton," and "malicious" with respect to the three claims raised on appeal, namely retaliation in violation of public policy, intentional infliction of emotional distress, and invasion of privacy. However, the trial court further concluded that the claims failed on the merits. Therefore, we will examine the merits of each claim.
 {¶ 20} In order to establish a prima facie case of retaliation, appellant must show (1) he engaged in a protected activity; (2) Jackson knew of his protected activities; (3) Jackson took an adverse employment action against him; and (4) a causal connection exists between the protected activity and the adverse employment action. Mittman v. Bahls,148 Ohio App.3d 109, 116, 2002-Ohio-2808, citing, Peterson v. Buckeye Steel Casings (1999), 133 Ohio App.3d 715, 727. An adverse employment action need not result in pecuniary loss, but must materially affect the appellant's terms and conditions of employment. Hart v. Columbus Dispatch/Dispatch Printing Co., Franklin App. No. 02AP-506, 2002-Ohio-6963, citing Peterson, supra at 727. "`Factors to consider when determining whether an employment action was materially adverse include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities. * * *" Changes in employment conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute an adverse employment action.'" Hart, supra, quoting Peterson, supra.
 {¶ 21} In the case at bar, appellant entered the release on May 6 to dispose of a potential age discrimination claim, the underlying facts of which are not clear. Therefore, on the day in question, appellant had already agreed to resign from employment. There is no allegation that he was not paid the full amount due him. To establish an adverse employment action, appellant does not claim that he suffered pecuniary loss, a demotion, a less distinguished title, or any loss of benefits. Appellant cannot claim any of this because he had effectively and voluntarily resigned all of his responsibilities as part of the release. Appellant relies on the fact that his office was cleaned out one day early. However, this did not "materially affect" any terms and conditions of appellant's employment. Such acts are insufficient to establish an adverse employment action. As Jackson points out, certain actions are to be expected after an employee's termination. Therefore, given these facts, the court finds that appellant did not suffer any adverse employment action. Since appellant's violation of public policy claim relies on his retaliation claim, that claim likewise fails. Accordingly, the first assignment of error is overruled.
 {¶ 22} In his second assignment of error, appellant contends that the trial court erred in granting summary judgment on appellant's intentional infliction of emotional distress claim.[3] This assignment of error is similarly without merit.
 {¶ 23} To prevail on a claim for intentional infliction of emotional distress, appellant must demonstrate the following four elements: (1) the actor intended to cause emotional distress or knew or should have known that the actions would result in serious emotional distress; (2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it would be considered utterly intolerable in a civilized society; (3) the actor's actions were the proximate cause of appellant's injury; and (4) appellant suffered severe mental anguish. Hanley v. Riverside Methodist Hosp. (1991), 78 Ohio App.3d 73, 82; Tackach v. Am. Med. Technology, Inc. (1998), 128 Ohio App.3d 457, 471.
 {¶ 24} Further, "* * * `[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'" Yeager v. Local Union 20 (1983), 6 Ohio St.3d 369, 374-375. Liability does not extend to mere insults, trivialities, annoyances, indignities, threats or petty oppressions. Id.
 {¶ 25} In the present case, appellant was embarrassed by the lack of respect with which he was treated on May 7 when his former co-workers emptied his office. He was offended because he had to sort through his personal items in front of other firefighters and had to retrieve items from the trash. Jackson claims that it was merely cleaning out his office because it believed that appellant's termination was effective that day rather than the next day, May 8. Although the conduct and motivation of Jackson is questionable, it simply does not rise to the level of "outrageous" conduct that is necessary to support an intentional infliction of emotional distress claim. Further, as the trial court found, appellant points to no specific facts that would allow a jury to conclude that appellant suffered from serious emotional distress. To a reasonable extent, embarrassment and humiliation are part of everyday life to which the law provides no remedy. Accordingly, appellant's second assignment of error is overruled.
 {¶ 26} In his third assignment of error, appellant contends that the trial court erred in granting summary judgment on appellant's invasion of privacy claim. In order to establish a claim for invasion of privacy, appellant is required to show a wrongful intrusion into one's private activities in a manner that outrages or causes mental suffering, shame, or humiliation to a person of ordinary sensibilities. Browning v. Ohio State Hwy. Patrol, 151 Ohio App.3d 798, 814, 2003-Ohio-1108, citing, Sustin v. Fee (1982), 69 Ohio St.2d 143, 145. The intrusion must be "highly offensive" to a reasonable person. Id. Here, appellant alleges that Jackson wrongfully intruded into his private activities when other firefighters unlocked his office, locker, and desk drawer without his permission and threw away personal belongings. Appellant alleges that sensitive personal documents concerning his son's legal problems were kept in the desk drawer.
 {¶ 27} A similar case regarding invasion of privacy is Lathwell v. Lorain Cty. Jobs for Ohio's Graduates (May 10, 2000), Lorain App. No. 99CA007303. In Lathwell, the appellant brought suit subsequent to his termination alleging various claims including invasion of privacy. The invasion of privacy claim was based on several employees' entry into appellant's locked office and their alleged search through the appellant's desk drawer. Appellant testified that he had nothing of a private nature in his office; however, he asserted that he had a reasonable expectation of privacy with respect to his office. Appellant admitted that he knew other employees had master keys, some of which opened his particular door. The court held that the appellant produced no evidence to establish a genuine issue of material fact as to whether the employees "had entered upon `his private affairs or concerns.'" Lathwell, supra. The fact that appellant knew other employees had a master key diminished the appellant's expectation of privacy. Id. Therefore, the intrusion was not "highly offensive" to a reasonable person.
 {¶ 28} In this case, appellant knew, like the appellant in Lathwell, that various other employees had master keys that could open his office. Ironically, appellant himself had used a master key to enter other employees' locked offices without their permission. Further, appellant often left his office unlocked. The fact that appellant had personal documents in his desk drawer regarding his son is of no legal consequence. Appellant did not have a reasonable expectation of privacy and the intrusion in this case would not be highly offensive to a reasonable person. This is particularly true under the facts in this case, where a master key exists and is actually used by the appellant. Based on the foregoing, appellant does not raise a genuine issue of fact with respect to his invasion of privacy claim. Accordingly, appellant's third assignment of error is overruled.
 {¶ 29} In conclusion, appellant's retaliation in violation of public policy claim fails as he failed to establish that any adverse employment action was taken against him. Appellant voluntarily resigned from employment in return for a monetary payment, thereby relinquishing his responsibilities. Appellant's intentional infliction of emotional distress claim also fails as he has failed to establish "outrageous" conduct that is utterly intolerable in a civilized society. Finally, appellant's invasion of privacy claim fails. Appellant acknowledged that a master key existed and was used, thereby diminishing his expectation of privacy. This is particularly true in light of the fact that appellant himself had unlocked employee offices without their permission. While the intrusion may have been poor judgment on the part of Jackson, it was not "highly offensive."
 {¶ 30} Accordingly, appellant's three assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.
[1] The parties dispute whether appellant actually told anyone that he was leaving to attend to the water problem. Appellant claims that he did tell people where he was going and Jackson claims that it did not know where appellant went or if he would be back.
[2] Since appellant did not oppose the summary judgment motion on the conversion claim and the trial court granted the motion, appellant has not raised the issue in this appeal.
[3] As the trial court noted, Ohio law does not recognize negligent infliction of emotional distress in the employment context. Accordingly, this court will only address the intentional infliction claim.