[Cite as *Silvey v. Washington Square Chiropractic Clinic*, 2012-Ohio-6214.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| BETH SILVEY, | : | **O P I N I O N** |
| Plaintiff, | : | |
| AMY SCHUDEL, | : | **CASE NO. 2011-G-3047** |
| Plaintiff-Appellant, | : | |
| - vs - | : | |
| WASHINGTON SQUARE CHIROPRACTIC CLINIC, et al., | : | |
| | : | |
| Defendants-Appellees. | | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 10M000204.

Judgment:  Reversed and remanded.

*Andrew L. Margolius* and *Emily E. Warren-Gilbert*, Margolius, Margolius and Associates, 55 Public Square, Suite 1100, Cleveland, OH  44113-1901 (For Plaintiff-Appellant).

*Mitchell L. Alperin* and *Mark W. Biggerman*, 29325 Chagrin Boulevard, Suite 305, Pepper Pike, OH  44122; and *Steven W. Tater*, Law Office of Steven W. Tater, 5031 Turney Road, Garfield Heights, OH  44125-2967 (For Defendants-Appellees).

THOMAS R. WRIGHT, J.

{¶1}  The instant appeal is from two final judgments of the Geauga County Court of Common Pleas.  Pursuant to the two entries, the trial court entered summary judgment in favor of appellees, Dr. Robert Cohen, Dr. Rick Tangerman, MidStates

Chiropractic of Willoughby, Ltd., and Washington Square Chiropractic Clinic, on all pending claims relating to appellant, Amy Schudel. Before this court, appellant asserts that summary judgment should not have been granted as to any of her five claims because her evidentiary materials were sufficient to raise genuine factual disputes regarding material facts.

{¶2} Dr. Robert Cohen is the part-owner and managing partner of a number of chiropractic clinics in Ohio. Two of these offices are Washington Square Chiropractic Clinic and MidStates Chiropractic, both of which are located in Geauga County. Each of the foregoing Geauga County clinics is a separate corporate entity for which separate corporate books are maintained. However, the employees of the two offices are often interchangeable; i.e., Dr. Cohen will move employees between the offices, depending upon where the need is.

{¶3} At some point prior to 2006, Dr. Cohen hired Dr. Rick Tangerman to work as a chiropractor at both Washington Square and MidStates. While Dr. Tangerman was seeing patients at the Washington Square office, Beth Silvey was hired to work primarily at that office. Subsequently, Ms. Silvey became the office manager of the Washington Square clinic. As part of her compensation, she was entitled to receive free treatments from any of the chiropractors associated with the two offices. At first, Ms. Silvey asked to receive treatments from Dr. Tangerman.

{¶4} Within a short period of the outset of her employment, Ms. Silvey informed Dr. Cohen that Dr. Tangerman was making inappropriate sexual statements in front of her. After formally asserting her initial complaint, Ms. Silvey attempted to overlook Dr. Tangerman's offensive comments and continued to work with him for approximately six

months. But, in late 2007, she felt compelled to register a second complaint regarding the nature of Dr. Tangerman's language around her, especially when he gave her the free treatments in accordance with the corporate policy. Upon conducting a truncated investigation into the new complaint, Dr. Cohen terminated Tangerman's employment at the Washington Square office on the basis that he had engaged in inappropriate acts. Within one month, though, Dr. Cohen re-hired him to work solely at the MidStates office, so that his contact with Ms. Silvey would be limited.

{¶5} In late 2008, Dr. Cohen approached Ms. Silvey about the possibility that Dr. Tangerman could return to work again at the Washington Square office. Ms. Silvey agreed with this new arrangement, and she and Tangerman were able to work together for a period of four months. However, in April 2009, Ms. Silvey began to notice that Dr. Tangerman was starting to make the same type of sexual comments to which she had previously taken offense. Ultimately, this caused her to submit to Dr. Cohen a new oral and written complaint about the situation. Furthermore, during this same time period, a female massage therapist at the Washington Square office began to have trouble with Tangerman's language and actions, and these problems later led to her resignation as an employee.

{¶6} In June 2009, Dr. Cohen hired appellant as a receptionist/secretary for the Washington Square office. Almost immediately after starting her employment, appellant began to receive treatments from Dr. Tangerman as part of her compensation. After a few treatments, though, appellant ended her treatment sessions with him because she thought that he was making inappropriate comments. According to appellant, whenever her body appeared to be tight, Tangerman would ask her what she had been doing the

3

night before. On the other hand, if she appeared to be more flexible, Tangerman would comment that her boyfriend must be "happy" with her.

{¶7} Appellant also thought that Dr. Tangerman was making improper sexual statements to her while they were working. According to her, Tangerman would often ask her questions about her boyfriend, would routinely try to talk to her about going to a nudist camp, and once told her that he loved her long hair because it was something he could "hold onto." In addition, appellant took offense to the fact that Tangerman would sometimes massage her neck in the office without seeking her permission first.

{¶8} Within two months of beginning her job at the Washington Square clinic, appellant formally complained to Dr. Cohen about Dr. Tangerman's behavior. Since the office manager, Ms. Silvey, had recently submitted her third complaint of inappropriate comments by Tangerman, Dr. Cohen again conducted an abbreviated investigation into the situation. At the end of August 2009, Dr. Cohen informed appellant and Ms. Silvey that he would remove Tangerman from their office, but he could not do so until he was able to hire a replacement doctor. As a result, Tangerman was allowed to continue to work at the Washington Square office until October 2009.

{¶9} At that time, Dr. Cohen again terminated Dr. Tangerman's employment at the Washington Square clinic, but immediately permitted him to start working again full-time at the MidStates clinic. Even though both Ms. Silvey and appellant had previously worked at the MidStates office on some occasions, they only performed their duties at the Washington Square office following Tangerman's "transfer." While Dr. Cohen was finally able to hire a new doctor for the Washington Square office, he did not give that doctor the same salary as Tangerman. Moreover, since the new doctor was only a part-

4

time employee, the amount of work for appellant and Ms. Silvey decreased; as a result, they were not able to work as many hours as they had previously. Then, in December 2009, the new doctor resigned his position at the clinic.

{¶10} During the weeks after the new doctor's resignation, Dr. Cohen told both appellant and Ms. Silvey that he was attempting to locate a new chiropractor to work at the Washington Square office. However, by mid-January 2010, Cohen had not hired a new doctor, and there was no further work for appellant and Ms. Silvey to perform at the Washington Square office. Hence, both of them ended their employment with Cohen's two companies. Despite this, approximately one week after they had left, Cohen chose to reopen the Washington Square office and see patients himself, acting in virtually the same capacity as Tangerman.

{¶11} Within one month of the termination of their employment, appellant and Ms. Silvey initiated the underlying civil action against Tangerman, Cohen, and the two companies. In their amended complaint, appellant and Ms. Silvey asserted five claims sounding in sexual harassment/hostile work environment, retaliation with constructive discharge, retaliatory harassment, negligent hiring and retention, and violation of public policy against sexual harassment and retaliation. For their relief, both plaintiffs sought primarily compensatory and punitive damages.

{¶12} Once the four defendants had answered the amended complaint, the two sides engaged in considerable discovery. After the case had been pending for 15 months, Dr. Cohen and his two companies moved for summary judgment regarding all pending claims asserted by both plaintiffs. Soon thereafter, Dr. Tangerman submitted a similar motion under Civ.R. 56(C). As part of their response to the defendants' motions,

5

the two plaintiffs also moved for partial summary judgment.

{¶13} The trial court issued separate written decisions on the respective motions of Cohen and Tangerman; however, the wording of the two decisions was identical. In regard to appellant, the trial court granted summary judgment on all five claims in favor of all four defendants. In its discussion of each claim, the court did not analyze every element. Instead, the court cited specific elements for each claim, and then found that the defendants were entitled to prevail on those elements under the summary judgment standard.

{¶14} In appealing the summary judgment ruling, appellant has advanced four assignments of error for review:

{¶15} "[1.] The Court erred when it granted summary judgment in favor of Defendants on the negligent retention and hiring claim.

{¶16} "[2.] The Court erred when it granted summary judgment in favor of Defendants on the Retaliation claims.

{¶17} "[3.] The Court erred when it granted summary judgment in favor of Defendants regarding the harassment claims.

{¶18} "[4.] The Court erred when it dismissed the public policy cause of action; joint liability exists."

{¶19} As noted above, none of appellant's five claims proceeded to trial; rather, each of her claims was disposed in summary judgment. Thus, in reviewing all four of appellant's assignments, this court must follow the general standard under Civ.R. 56(C):

{¶20} "In reviewing an award of summary judgment, we apply a de novo standard of review. * * *. As such, summary judgment is appropriate when: (1) there is

no genuine issue as to any material fact; (2) the nonmoving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, who is entitled to have the evidence construed most strongly in her favor. * * *." (Citations omitted.) *Arp v. Geauga Cty. Commrs*, 11th Dist. No. 2002-G-2474, 2003-Ohio-2837, ¶21.

{¶21} "The Supreme Court stated in *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996) * * *, that:

{¶22} "'(* * *) the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.* The "portions of the record" to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. (* * *)' (Emphasis sic.)

{¶23} "If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App. 3d 704, 711, * * *. The *Brown* court stated that 'we review the judgment independently and without deference to the trial court's determination.' Id. An appellate court must evaluate the record 'in a light most favorable to the nonmoving party.' *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, * * *. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party

7

opposing the motion.  Id." *Paugh v. P.J. Snappers*, 11th Dist. No. 2004-T-0029, 2005-Ohio-701, ¶15-17.

{¶24}  Under her first assignment, appellant challenges the trial court's summary judgment analysis as to her claim of negligent hiring and retention of Dr. Tangerman by Dr. Cohen and the two companies.  However, our review of the elements of that claim demonstrates that there must be a preliminary showing of harassment before a finding of negligent hiring and retention can be made; accordingly, the substance of appellant's sexual harassment claim will be addressed first.  Under her third assignment, appellant contends that the trial court erred in granting summary judgment as to that claim because her evidentiary materials were sufficient to raise a factual dispute concerning whether she had been subject to a hostile work environment.

{¶25}  "R.C. 4112.02(A) prohibits an employer from engaging in sexual discrimination against an employee.  Case law interpreting and applying Title VII of the Civil Rights Act of 1964, [Section] 701 *et seq.*, as amended, 42 U.S.C.A.  [Section] 2000e *et seq.* ('Title VII') is generally applicable to cases involving R.C. Chapter 4112. *Genaro v. Cent. Transport, Inc.* (1999), 64 Ohio St.3d 293, * * *.  Sexual harassment that constitutes discrimination on the basis of sex and violates Title VII is generally categorized as either a *quid pro quo* claim or a hostile work environment claim.  The terms '*quid pro quo*' and 'hostile work environment' serve to distinguish roughly between cases in which threats are carried out, *quid pro quo*, and cases in which threats are not carried out or are absent altogether, hostile work environment.  *Burlington Ind., Inc. v. Ellerth* (1998), 524 U.S. 742, * * *." *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 722-723 (10th Dist.1999).

8

{¶26} In her amended complaint in the instant case, appellant based her claim of sexual discrimination upon an assertion of a hostile work environment. To prevail of this type of discrimination claim, the employee must demonstrate: "(1) that the harassment was unwelcome; (2) that the harassment was based on sex; (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel v. Food Ingredient Specialties*, 89 Ohio St.3d 169, 176-177 (2000).

{¶27} As a general proposition, a hostile work environment cannot be proven solely by the fact that the alleged harasser has acted in an offensive manner. *Peterson*, 133 Ohio App.3d at 723. Instead, the behavior must be so severe or pervasive that a reasonable person would conclude that the working environment was abusive. *Id.*

{¶28} In rejecting appellant's hostile work environment claim, the trial court held that she had failed to create a factual dispute as to the second element; i.e., she did not show that the harassment by Tangerman had been based on sex. In essence, the trial court concluded that the actions of Tangerman were not of such a nature that it could be said that he had directed the acts toward appellant solely because she was a female.

{¶29} As to some of Tangerman's alleged comments, the trial court's analysis would appear to be appropriate. For example, in relation to the comments about going to a nudist camp, it cannot be said that Tangerman would have had this type of general conversation with appellant only because she was a female. However, this analysis

9

would not apply to the majority of Tangerman's other statements, including his reference to her long hair and his assertions concerning her flexibility and the supposed cause of her inflexibility. Appellant produced evidence from which reasonable minds could conclude that the comments would not have been made unless appellant were a female. Furthermore, the act of massaging appellant's neck without permission was an act that reasonable minds could conclude were based upon appellant's sex.

{¶30} Pursuant to the parties' evidentiary materials, there was no dispute that Dr. Tangerman behaved in the manner alleged by appellant. Thus, given the nature of the majority of those acts, appellant produced evidence supporting a hostile work environment and an issue for trial.

{¶31} Under the third element of her harassment claim, appellant was required to prove that the sexual harassment was so severe or pervasive that it had an adverse affect upon the working environment in the office. Given the trial court's holding as to the second element, it is apparent that the trial court never ruled upon the third element. Nevertheless, in light of the fact that appellant's claim was predicated upon comments or acts which occurred on multiple occasions, her evidentiary materials were sufficient to create a factual dispute as to whether her working conditions were abusive.

{¶32} Under the last element for a claim of hostile work environment, appellant had to demonstrate that her employer, Dr. Cohen and the two companies, were aware of the harassment and failed to take immediate and appropriate steps to alleviate the problem. As to the "awareness" requirement, a review of the evidentiary items indicates that there was no dispute that appellant registered a complaint about Dr. Tangerman's behavior, and that Cohen had previously received at least two other complaints about

10

his inappropriate behavior. Regarding the "corrective action" requirement, appellant's materials were sufficient to demonstrate that, even though Dr. Cohen had already been required to transfer Tangerman to the MidStates office on one prior occasion, no steps had been taken to ensure that he would not engaged in the same behavior again. Plus, when appellant registered her complaint in August 2009, Cohen waited for two months to remove him from the Washington Square office.

{¶33} When construed in a manner most favorable to appellant, the evidentiary materials were readily sufficient to create a factual dispute as to all four elements of her hostile work environment claim. Thus, because the four defendants were not entitled to summary judgment of that claim, appellant's third assignment has merit.

{¶34} Having disposed of the sexual harassment claim, the merits of appellant's claim of negligent hiring and retention can now be addressed. In ruling upon this claim, the trial court held that summary judgment was warranted because there had been no sexually harassing behavior and there was no casual link between Dr. Cohen's alleged negligence and the injury to appellant. Under her first assignment, appellant contends that the trial court erred in construing her evidentiary material.

{¶35} "The elements of a claim for relief for negligent hiring or negligent retention are: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Arp*, 2003-Ohio-2837, at ¶45.

{¶36} In regard to the fifth of the foregoing elements, it has been indicated: "If

the employer had prior knowledge of the alleged harasser's incompetence, that is, his subjecting fellow employees to sexual harassment, and despite this knowledge failed to intervene to prevent a recurrence of the behavior in the work place, then the employer would be [liable for] negligent retention." *Payton v. Receivables Outsourcing, Inc.*, 163 Ohio App.3d 722, 2005-Ohio-4978, ¶45 (8th Dist.).

**{¶37}** As to the trial court's holding that there were no sexually harassing acts by Dr. Tangerman, this court's legal analysis readily establishes that holding was not justified in light of appellant's evidentiary materials. That is, the materials were sufficient to raise a factual dispute regarding whether Tangerman was viewed as "incompetent" because he had previously engaged in sexual harassment. Moreover, there was also a factual dispute as to whether Dr. Cohen had actual knowledge of Tangerman's previous behavior with Ms. Silvey.

**{¶38}** In relation to the "proximate cause" element, when construed in a manner most favorable to her, appellant's evidentiary items tended to show that, despite two serious complaints that had already been registered by Ms. Silvey, Cohen chose to retain Tangerman and return him to the Washington Square office. As a result of this decision, appellant produced evidence supporting her claim that she was subjected to an environment of sexual harassment. Furthermore, if the foregoing facts were found by a jury, then a reasonable person could conclude that Cohen's negligence in retaining Tangerman was the proximate cause of any harm sustained by appellant due to the harassment.

**{¶39}** Again, the trial record before this court supports the holding that appellant presented sufficient evidence which, if believed, could warrant findings in her favor as to

each element of her claim of negligent hiring or retention. Therefore, because summary judgment should not have been granted, her first assignment also has merit.

**{¶40}** Appellant's second assignment of error pertains to the merits of her claim for retaliation, under which she maintained that her position at the Washington Square office was constructively terminated as a result of her harassment complaint. In ruling upon this claim, the trial court again concluded that appellant had again failed to prove any causal connection between the making of the complaint and the subsequent loss of her job. Before this court, appellant argues that her evidentiary materials were sufficient to avoid summary judgment on this particular claim.

**{¶41}** "To prove a claim of retaliation, a plaintiff must establish three elements: (1) that she is engaged in a protected activity; (2) that she was subjected to an adverse employment action; and (3) that a causal link exists between a protected activity and the adverse action. Once a plaintiff successfully establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. If the defendant meets its burden, the burden shifts back to the plaintiff to show that the articulated reason was a pretext." *Peterson*, 133 Ohio App.3d at 727.

**{¶42}** In responding to the two motions for summary judgment, appellant argued that her constructive discharge had been a direct result of her submission of her sexual harassment complaint against Dr. Tangerman. Specifically, she alleged that Cohen had purposely failed to locate and hire a new full-time doctor to take Tangerman's place at the Washington Square office. In turn, Cohen's actions had the effect of eliminating her job because the office was no longer drawing in any business. According to Cohen and his two companies, though, the lack of business constituted a legitimate reason to end

13

appellant's employment, and was not in any way connected to the sexual harassment complaint.

{¶43} Despite the fact that Cohen and the company carried their burden to state a legitimate reason for the lack of business at appellant's office, appellant was able to present some evidence tending to show that the lack of business was a sham. Specifically, she submitted some evidence showing that Dr. Cohen started seeing patients again at the Washington Square office within one week after appellant left her position. From this, a reasonable person could infer that Cohen had purposely waited until she left to re-open the office. In other words, a jury could reasonably conclude that Cohen sought to eliminate her job by limiting the business of the office until she gave up.

{¶44} When construed in her favor, appellant's evidence was sufficient to raise a factual dispute that she was the subject of an adverse employment action as a result of her complaint against Tangerman. For this reason, her third assignment of error is well taken because the trial court should not have granted summary judgment of her claim of retaliation.

{¶45} Appellant's final assignment relates to her "violation of public policy" claim, under which she asserted that Cohen and the two companies could still be found liable even if the number of employees for the Washington Square Chiropractic Clinic was not greater than three. In disposing of this claim, the trial court found that appellant would never be able to establish that she was the subject of an adverse employment action that "jeopardizes" the public policy against sexual harassment. Thus, in essence, the trial court rejected the public policy claim for the identical reason which it cited regarding

14

appellant's retaliation claim.

{¶46} "A cause of action for wrongful discharge in violation of public policy sounds in tort.  * * *.  A plaintiff must prove the following elements to prevail on such a claim: (1) a clear public policy exists and is manifested in a state or federal constitution, in statute or administrative regulation, or in the common law * * *; (2) dismissing employees [for the reason in a given case] would jeopardize the public policy * * *; (3) the plaintiff's dismissal was motivated by conduct related to the public policy * * *; and (4) the employer lacked an overriding legitimate business justification for the dismissal * * *."  *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, ¶9.

{¶47}  In relation to the third element of the foregoing quote, the Supreme Court has stated that the requisite causation can be established by proving that the discharge of the employee/plaintiff was retaliatory.  *Id*. at ¶10.  Accordingly, pursuant to the legal analysis under appellant's second assignment of error, this court further concludes that her evidentiary materials were sufficient to raise a factual dispute concerning whether the adverse employment action against her, i.e., the termination of her employment, was based upon the fact that she had registered a sexual harassment complaint against Dr. Tangerman.  Hence, to the extent that summary judgment was not warranted for the reason referenced by the trial court, appellant's fourth assignment likewise has merit.

{¶48}  Pursuant to the foregoing discussion, each of appellant's four assignments of error has merit.  Accordingly, the judgment of the Geauga County Court of Common Pleas is reversed, and the case is hereby remanded for further proceedings consistent with this opinion.

15

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.