James A. MICELI, Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION, Federal Aviation Administration, Defendants–Appellees.

No. 02–5561.

United States Court of Appeals, Sixth Circuit.

Nov. 24, 2003.

James M. Moore, pro se, Lindhorst & Dreidame, Cincinnati, OH, for Plaintiff–Appellant.

John S. Osborn, III, Asst. U.S. Attorney, Frances E. Catron, U.S. Attorney, U.S. Attorney's Office, Lexington, KY, for Defendant–Appellee.

Before NELSON, GIBBONS, and SUTTON, Circuit Judges.

GIBBONS, Circuit Judge.

Petitioner-appellant James Miceli brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against his employer, the Federal Aviation Administration (FAA), alleging that in 1998 his supervisors retaliated against him for testifying in 1996 that his prior supervisor had sexually harassed another employee prior to 1996. Miceli claims that the retaliation took the form of an August 3, 1998, memorandum from his direct supervisor notifying him that his performance did not meet expectations and requiring him to improve his performance or face disciplinary action.

The district court granted summary judgment in favor of the FAA, holding that the August 3, 1998, memorandum did not constitute an adverse employment action and that, even if it did, Miceli has offered no proof that the memorandum was the result of his testimony in 1996. Miceli appealed to this court, arguing that these findings were in error. For the reasons set forth below, we affirm the decision of the district court granting summary judgment to the FAA.

## I.

Miceli has worked for the FAA in the air traffic control tower at the Northern Kentucky–Greater Cincinnati International Airport for more than thirty years. Miceli alleges that, sometime prior to 1996, he witnessed the then manager of the tower, Wayne Goswick, sexually harass another employee, Cheryl Harris. In June or July 1996, Miceli testified against Goswick in response to a government investigation into Harris's sexual harassment claim.

In late 1996, Goswick separated from the FAA. In February 1998, Michael Wheeler became the manager of the Cincinnati tower and Sherry Jensen became Miceli's direct supervisor. Miceli alleges that Wheeler and Jensen verbally abused

him, demeaned him, and "effectively 'cut [him] out of the loop' of management decisions" in retaliation for his testimony against Goswick in 1996. According to Miceli, this "demeaning treatment" culminated when he received a memorandum dated August 3, 1998, from Jensen which informed him that his performance was unsatisfactory. Miceli was also informed in this letter that he would have the opportunity to participate in the company's "Opportunity to Demonstrate Performance Plan," the outcome of which would determine his future job status.[1]

On September 23, 1998, Miceli filed a complaint of discrimination with the Department of Transportation, Office of Civil Rights, alleging that the August 3, 1998, memorandum (referred to by the parties as an ODP letter) constituted retaliation for his 1996 testimony. By letter dated October 14, 1998, Jensen notified Miceli that he had successfully completed his Opportunity to Demonstrate Performance Plan. Miceli exhausted all of his administrative remedies with respect to his 1998 complaint, and on September 12, 2000, Miceli filed this action in the district court.

## II.

The district court, adopting the magistrate's report and recommendation, granted the FAA's "motion to dismiss or for summary judgment." We review such a grant *de novo* under the summary judgment standard. We affirm a lower court's grant of summary judgment if there is no genuine issue as to any material fact and the moving party was entitled to judgment as a matter of law. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir.2001) (citing Fed.R.Civ.P. 56(c)).

## III.

"In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Allen v. Mich. Dep't of Corrections*, 165 F.3d 405, 412 (6th Cir. 1999).

Here, Miceli cannot demonstrate that the FAA took any adverse employment action. To satisfy the adverse employment action element of a Title VII claim, a plaintiff must demonstrate that she suffered a "materially adverse change in the terms of her employment." *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d

---

1. The five page memorandum states in part: This is notice that your performance in your position of Support Manager, FG 2152–15, does not meet expectations. This notice also serves to introduce a formal Opportunity to Demonstrate Performance Plan.

   The Outcomes and Expectations of your standardized Performance Plan, specific examples of performance that does not meet expectations, time period to improve performance and the results if performance that meets expectations is not attained are outlined below:

   . . .

   If at the completion of this 60 day calendar period your performance meets expectations in the Outcome cited above, you will be informed of such, and no further action will be initiated. If your performance remains at the "Does Not Meet Expectations" level on the Outcomes described above, you will be removed, demoted or reassigned. If your performance meets expectations during this opportunity period, you will be expected to maintain that level of performance. If at any time during the one year period beginning with the date of this letter your performance in the Outcome identified above again does not meet expectations, actions to remove, demote or reassign you will be initiated without another opportunity to improve performance, similar to the one provided in this letter.

876, 885 (6th Cir.1996). In other words, there must be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ The ODP letter did not constitute an adverse employment action because it did not materially change the terms of Miceli's employment, as viewed in light of the above standard. *Cf. Agnew v. BASF Corp.*, 286 F.3d 307 (6th Cir.2002) (holding that an employer's requirement that an employee comply with a "performance improvement plan" or face disciplinary action did not constitute an adverse employment action under Michigan's equivalent of Title VII). For instance, the ODP letter did not affect Miceli's wages. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999) (holding that lowered ratings in a performance evaluation did not constitute an adverse employment action in the absence of "evidence to show that the lowered performance ratings actually had an effect on her wages such that a court may conclude that there was a materially adverse employment action.").

■ The absence of an adverse employment action defeats Miceli's claim. The claim also fails, however, because Miceli has not demonstrated that there was a causal connection between the protected activity and the alleged adverse employment action. To show a such a causal connection, Miceli must either show direct evidence, or offer proof of "knowledge coupled with a closeness in time that creates an inference of causation." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir.2000). The *Nguyen* court goes on to note that "temporal proximity alone will not support an inference of retaliatory dis-crimination when there is no other compelling evidence." *Id.*

Here, Miceli testified in June or July of 1996. Miceli submits his own affidavit, in which he states that, sometime around August 1996, Goswick told him that by testifying earlier that summer Miceli had "gone outside the circle of management" and that "you don't do that." The alleged retaliatory discrimination did not take place until 1998, two years after Miceli testified. In addition, Goswick separated from the FAA in late 1996 and was not involved in the 1998 decision to issue the ODP letter to Miceli. Miceli also attests that soon after Wheeler became manager, Miceli "heard Mr. Wheeler angrily expressing, in substance, that 'they're not going to do to me what they did to Goswick.'" This isolated statement does not constitute evidence that Miceli's 1996 testimony resulted in the 1998 ODP letter. Thus, here Miceli has failed to offer evidence of temporal proximity or other compelling evidence of a causal connection.

## IV.

For these reasons, we find that Miceli has not met his burden of producing evidence that he was subject to an adverse employment action. In addition, even if we accept his contention that the ODP letter was an adverse employment action, Miceli has not produced evidence from which a trier of fact could find a causal connection between the protected activity, testifying about Goswick's alleged sexual harassment, and the ODP letter. Therefore, we affirm the decision of the district court granting summary judgment to the FAA.