OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Isaiah Aycox, Jr., from a judgment of the Franklin County Court of Common Pleas, granting summary judgment in favor of defendants-appellees, Columbus Board of Education, Manny Magno, Andrew Bowman, Horace Miller and James Like.
 {¶ 2} Appellant is the "Chief Complaints Examiner" with the Ohio Diocese Schools of Biblical Theology. In that capacity, appellant became acquainted with Bertha Bradley, a custodian with the Columbus Public Schools ("CPS"). In 1999, Bradley was promoted from Custodian II to a Head Custodian position, but she was subsequently demoted from this position during her probationary period.
 {¶ 3} Appellant represented Bradley when she filed an unfair labor practice charge with the State Employment Relations Board ("SERB"); appellant filed a notice of appearance with SERB on April 24, 2000. The parties signed a settlement agreement on June 6, 2000, regarding Bradley's unfair labor practice charge. On June 12, 2000, appellant signed a recommendation that Bradley file a charge of discrimination against CPS and several of its employees with the Ohio Civil Rights Commission ("OCRC") and/or the Equal Employment Opportunity Commission ("EEOC"). On June 7, 2001, the OCRC determined that it was "not probable" that CPS engaged in unlawful practices under R.C. Chapter 4112.
 {¶ 4} On April 21, 2001, appellant completed an application with appellee, Columbus Board of Education (individually "board"), for the position of Custodian II. The affidavit of Wayne L. Christie, personnel analysis supervisor for CPS, provided background information regarding the application and selection process utilized by the CPS. As a school district, CPS is required to fill classified positions according to the civil service rules contained in R.C. Chapter 124. A candidate for employment must complete an application, earn a qualifying score on the appropriate civil service examination, and successfully complete a criminal background check. Once a candidate fills out an initial application, a training and experience examination score is determined based on the information submitted by the candidate; the candidate must also take the appropriate civil service examination. The raw scores on these two examinations are scaled, and a converted score is reported for each candidate.
 {¶ 5} Candidates who are eligible for a "veteran's preference," pursuant to R.C. 124.23(B), are credited with an additional 20 percent of the converted score on their civil service examination. The tabulation results in a final "grade" for all of the candidates. Candidates receiving a passing score are placed on an "eligibility list."
 {¶ 6} Candidates who have been employed with the school district during the preceding year, and who are seeking reinstatement, are placed at the top of the eligibility list. Candidates who are permanent classified employees of CPS and who are seeking a promotion are listed after those candidates seeking reinstatement. The remaining candidates are listed according to their "grade," from highest to lowest.
 {¶ 7} Upon request from a department of the CPS, a certification list is generated from the names on the eligible list and sent to the department, incorporating the most recent test results. Testing is conducted on a periodic basis, and candidates are notified of the location, date and time of the interview. The requesting department conducts interviews of all the listed applicants that appear for an interview. Following the interviews, the department recommends candidates for employment.
 {¶ 8} Certain rules apply regarding the recommendation process, and, in instances in which a promotional employee is considered for a position, a "Rule of Three" applies. Under this rule, the department may only consider the top three candidates on the eligibility list who appear for the interview. When promotional employees are not being considered, a "Rule of Ten" applies, and the department may consider the top ten candidates on the eligibility list who appear for the interview. If more than one position is being filled, the department shall recommend a candidate for the first position by considering the top three or ten, as applicable, and then recommend a candidate for the second position from the next three or ten. The civil service office is responsible for confirming the eligibility of the recommended candidates, including confirmation that the candidate has passed a criminal background check.
 {¶ 9} On June 28, 2001, appellant took a civil service examination as part of the application process for seeking a custodial position with CPS. Appellant obtained a raw score of 75.06, and a veteran's preference of 20 percent was added to this score. On August 28, 2001, the civil service office notified appellant that he received a final grade of 90.07. The civil service office added appellant's name to the eligibility list.{¶ 10} On September 24, 2001, appellant had his first interview for the position of Custodian II. The interview was conducted by appellee Miller, an assistant custodial supervisor. In his deposition, appellant testified that Miller asked him during the interview: "Weren't you the fellow that represented Bertha Bradley?" (Appellant's depo., at 52.) Appellant telephoned CPS a few days later and was informed that he did not get the job.
 {¶ 11} Appellant was again interviewed by Miller on December 6, 2001, but was not hired. Appellant's representation of Bradley was not mentioned during this interview. Appellant was interviewed for Custodian II positions by appellee Like on four occasions (December 13, 2001, January 17, 2002, March 21, 2002, and September 27, 2002), but he was not hired for those positions. Appellant had several other interviews for Custodian II positions, including an interview with appellee Bowman on April 30, 2002, but was not offered a job following those interviews.
 {¶ 12} Appellees Miller, Like and Bowman all filed affidavits denying any knowledge, at the time of the interviews, that Bradley had filed a discrimination charge or that appellant had recommended that she file such a charge. Miller related that appellant "shared with me" during the interview that he had previously "represented" Bradley, but Miller stated that he did "not know in what capacity or regarding what issue he represented her." (Miller affidavit, at 2.) Appellee Like recalled "not being impressed with Mr. Aycox's answers to the custodial related questions that I asked him." (Like affidavit, at 1.) Appellee Bowman averred "the only reason I would not have recommended Mr. Aycox for employment would have been Mr. Aycox's answers to my custodial related questions." (Bowman affidavit, at 1.)
 {¶ 13} On January 2, 2003, appellant filed a complaint against appellees, alleging causes of action for retaliation, intentional infliction of emotional distress, and negligent retention and supervision of employees. Appellant alleged that appellees refused to hire him for open positions in retaliation for his "opposition of an unlawful discriminatory practice and/or his participation in a charge of discrimination as defined in O.R.C. § 4112."
 {¶ 14} On October 9, 2003, appellees filed a motion for summary judgment. Attached to the motion were the affidavits of appellees Magno, Like, Miller and Bowman. On October 30, 2003, appellant filed a memorandum contra appellees' motion for summary judgment, and he attached his own affidavit in support. By decision and entry filed October 5, 2003, the trial court granted appellees' motion for summary judgment, dismissing all of appellant's claims.
 {¶ 15} On appeal, appellant sets forth the following four assignments of error for review:
I. The trial court erred in granting summary judgment for Appellees on Appellant's retaliation claim.
II. The trial court erred in granting summary judgment for Appellees on Appellant's intentional infliction of emotional distress claim.
III. The trial court erred in granting summary judgment for Appellees on Appellant's negligent retention and supervision claim.
IV. The trial court erred in rendering moot the Appellant's punitive damages claim against Appellees Magno, Bowman, Miller and Like.
 {¶ 16} Under his first assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellees on his retaliation claim. In Roberts v. PerformanceSite Mgt., Inc., Franklin App. No. 03AP-784, 2004-Ohio-2820, at ¶ 8-9, this court noted the standard of review for summary judgment, stating in relevant part:
An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41, 654 N.E.2d 1327; Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. Summary judgment is proper only when the movant demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Gradyv. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183,677 N.E.2d 343.
Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, at 293, 662 N.E.2d 264;Vahila v. Hall (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164; Civ.R. 56(E).
 {¶ 17} Under Ohio law, an employer may not retaliate against an employee who has opposed an unlawful discriminatory practice, or who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under R.C. 4112.01 through 4112.07." Peterson v. Buckeye SteelCasings (1999), 133 Ohio App.3d 715, 727. In order to prove a claim of retaliation, a plaintiff must establish the following elements: (1) that he or she engaged in protected activity; (2) that he or she was subjected to an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse action. Id. If a plaintiff establishes a prima facie case, it is the defendant's burden to articulate a legitimate reason for its action. Id. If the defendant meets its burden, the burden then shifts back to the plaintiff to demonstrate that the proffered reason was a pretext. Id. Ohio courts rely upon federal case law in analyzing a retaliation claim. Id.
 {¶ 18} In granting summary judgment in favor of appellees, the trial court accepted appellant's contention that he could satisfy the first two elements of his prima facie case, i.e., that appellant was engaged in a protected activity by assisting Bradley in filing discrimination charges, and that appellant was subjected to an adverse employment action by not being recommended for a custodial position with CPS. The trial court concluded, however, that appellant had failed to establish that appellees' decision not to hire him was causally related to his actions in assisting Bradley file the earlier charges.
 {¶ 19} Appellant argues on appeal, as he did before the trial court, that his deposition testimony presents evidence of appellees' awareness of EEOC or other activity in which appellant assisted Bradley. Specifically, according to appellant's testimony, during his September 24, 2001 interview with appellee Miller, he was asked by Miller, "Weren't you the fellow that represented Bertha Bradley?" (Appellant's depo., at 52.) As noted under the facts, Miller filed an affidavit stating that, at the time he interviewed appellant, he "did not know that Ms. Bradley had filed a charge of discrimination with the Ohio Civil Rights Commission or Equal Employment Opportunity commission, or that Mr. Aycox had recommended that she do so." (Miller affidavit, at 2.) Miller further averred in the affidavit that appellant "shared with me that he represented Ms. Bradley during the interview, however, I do not know in what capacity or regarding what issue he represented her." Id. While the inquiry whether appellant "represented Bertha Bradley" is somewhat vague, we will assume, in construing the evidence most strongly in favor of appellant, that there is a dispute as to whether Miller was aware of some form of protected activity involving appellant.[1]
 {¶ 20} As noted above, the trial court found that appellant failed to establish a causal connection for his retaliation claim. The Sixth Circuit Court of Appeals has held that a causal connection between complaints of discrimination and an adverse employment action may be shown either by direct evidence or by evidence of the employer's knowledge of the complaints coupled with closeness in time sufficient to create an inference of causation. Nguyen v. City of Cleveland (C.A.6, 2000),229 F.3d 559, 566. See, also, Miceli v. United States Dept. of Transp.
(C.A.6, 2003), 83 Fed.Appx. 697, 700. However, temporal proximity alone is insufficient to support an inference of retaliatory discrimination if there is no other "compelling evidence."Nguyen, supra, at 566. See, also, Lang v. Illinois Dept. ofChildren Family Serv. (C.A.7, 2003), 361 F.3d 416, 419
("[c]lose temporal proximity provides evidence of causation * * * and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link"). The United States Supreme Court has noted that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be `veryclose.'" (Emphasis added.) Clark County School Dist. v.Breeden (2001), 532 U.S. 268, 273. In Breeden, the Supreme Court cited cases in which federal courts had found three and four-month time lapses insufficient to show causation.
 {¶ 21} Other federal courts have found that intervals of two to four months between the protected activity and the adverse action are insufficient to show a causal connection. See Kipp v.Missouri Hwy. Transp. Comm. (C.A.8, 2002), 280 F.3d 893, 897
(interval of two months between complaint and adverse action "so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link"); Cooper v. City of North Olmstead (C.A.6, 1986),795 F.2d 1265, 1272 ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation"). At least one Ohio appellate court has found that a three-month period of time is insufficient. Briner v. Nat'l City Bank (Feb. 17, 1994), Cuyahoga App. No. 64610 (proximity in time alone not sufficient to establish causal connection, and thus plaintiff unable to prove prima facie case of retaliation).
 {¶ 22} Further, it has been held that "[t]emporal proximity is much less suspicious when the adverse action is the denial of an affirmative request the plaintiff made subsequent to the protected activity." Meiners v. Univ. of Kansas (C.A.10, 2004),359 F.3d 1222, 1231. This is especially so in the context of "failure to hire" cases, where "the alleged retaliation is committed by a potential employer who has not yet hired the plaintiff," leading courts in such cases to recognize that "temporal proximity alone will usually be insufficient to establish a causal connection between the protected opposition to discrimination and not being hired." Kelley v. Goodyear Tire Rubber Co. (C.A.10, 2000), 220 F.3d 1174, 1179 (plaintiff failed to establish prima facie case where only evidence of causal connection between complaint of discrimination and not being hired is that adverse employment action occurred shortly after he announced his previous filings of discrimination).
 {¶ 23} In the present case, we agree with the trial court that appellant has failed to establish a prima facie case for retaliation. Even accepting that some of the board's employees had knowledge that appellant assisted Bradley in the SERB action, appellant notes in his appellate brief that he assisted Bradley with her SERB action and OCRC/EEOC complaint "from April through June 2000." Here, in the absence of any other "compelling evidence" of discriminatory intent, the significant lapse of time (more than one year) between when appellant assisted Bradley in filing her SERB and/or OCRC complaints and appellees' failure to hire him following the interviews, negates the inference of discrimination. Miceli, supra; Clark County School Dist.,
supra. Accordingly, we find that appellant has failed to establish a causal connection between his protected activity and appellees' alleged retaliatory conduct, and, therefore, the trial court did not err in finding that appellant had failed to make a prima facie case of discrimination.
 {¶ 24} We also agree with the trial court that, even if appellant had established a prima facie case, his claim would still fail as appellees have articulated legitimate, nondiscriminatory reasons for failing to hire him that appellant has not shown to be mere pretext. Thus, we conclude that the trial court did not err in granting summary judgment in favor of appellees on appellant's retaliation claim.
 {¶ 25} Appellant's first assignment of error is without merit and is overruled.
 {¶ 26} Under his second assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellees on his claim for intentional infliction of emotional distress.
 {¶ 27} In order to defeat a motion for summary judgment on a claim for intentional infliction of emotional distress, a plaintiff must present evidence creating a genuine issue of material fact as to the following elements: (1) the defendant intended to cause emotional distress or knew or should have known that actions taken would result in severe emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all bounds of decency, and was such as to be considered utterly intolerable in a civilized community; (3) the defendant's actions proximately caused plaintiff's psychic suffering; and (4) the plaintiff suffered serious mental anguish of a nature that no reasonable man could be expected to endure.Burkes v. Stidham (1995), 107 Ohio App.3d 363, 375.
 {¶ 28} In the present case, the trial court noted that appellant's claim for intentional infliction of emotional distress was predicated upon his retaliation claim. Specifically, appellant's complaint alleged that appellees "should have known that their unlawful retaliation and refusal to hire him would result in serious emotional distress." Thus, the trial court, finding no genuine issue of material fact as to appellant's retaliation claim, rejected appellant's claim for intentional infliction of emotional distress. Based upon our determination that summary judgment was properly granted in favor of appellees on appellant's retaliation claim, we agree with the trial court that appellant's claim for intentional infliction of emotional distress, predicated on the retaliation claim, is without merit.
 {¶ 29} Appellant's second assignment of error is without merit and is overruled.
 {¶ 30} Under his third assignment of error, appellant asserts that the trial court erred in rejecting his negligent retention and supervision claim.
 {¶ 31} The elements of negligent retention are: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Harmon v. GZK, Inc. (Feb. 8, 2002), Montgomery App. No. 18672. Further, courts have applied these elements to a claim of negligent supervision as well. Id.
 {¶ 32} The trial court found that appellant's claims for negligent supervision and retention were subsumed by the retaliation claim. On this point, we note that appellant alleged in his complaint that the board failed to act to stop its employees from unlawful retaliatory actions; therefore, to the extent appellant's negligent supervision and retention were predicated upon alleged retaliatory actions, the trial court properly rejected appellant's claim.
 {¶ 33} Appellant further alleged in his complaint that appellees Magno, Bowman, Miller and Like were "all incompetent as evidenced by their management decisions and hiring practices." As proof of their incompetence, appellant points to the fact that, even though he was a highly-qualified candidate, he was passed over numerous times by appellees. However, a plaintiff's own opinions about his or her work qualifications is insufficient to cast doubt on the legitimacy of an employer's proffered reasons for its employment actions. OST v. West Suburban TravelersLimousine, Inc. (C.A.7, 1996), 88 F.3d 435, 441. Here, appellant's own belief that he was highly qualified and should have been hired is not sufficient to raise a genuine issue of material fact. Nor has appellant presented evidence to create a genuine dispute of fact as to whether the employer in this case knew or had reason to know that its employees were incompetent. Appellant acknowledged during his deposition that he did not notify the board about its employees' incompetence, and that he "wouldn't know" if the board had such knowledge. (Appellant's depo., at 136.)
 {¶ 34} Appellant's third assignment of error is without merit and is overruled.
 {¶ 35} Under the fourth assignment of error, appellant asserts that the trial court erred in its disposition of appellant's punitive damages claim against appellees Magno, Bowman, Miller and Like. In light of our determination that the trial court did not err in granting summary judgment as to appellant's claims for retaliation, intentional infliction of emotional distress, and negligent retention and supervision, the issue raised under this assignment of error is overruled as moot.
 {¶ 36} Based upon the foregoing, appellant's first, second and third assignments of error are overruled, appellant's fourth assignment of error is overruled as moot, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] The trial court noted that appellant, in his memorandum contra appellees' motion for summary judgment, asserted that appellee Bowman actually made the statement in question, an argument that contradicted appellant's own deposition testimony. The court further noted that appellant stated during his deposition that Bowman never asked him about his involvement with Bradley's discrimination charges.